May it please the Court, my name is Sarah Schlosser. I'm with an attorney with Gibson-Denman Crutcher. I represent the petitioner, Mr. Soto Placencia's immigration appeal. I'd like to reserve two minutes for rebuttal, if I may. Sure. Mr. Soto Placencia's family unity petition was approved in 1994. Could you speak a little bit louder? Speak into that mic. Thank you. Thank you. Is that better? Just keep your voice up. Okay. Mr. Soto Placencia's family unity petition was approved in 1994, and the government does not dispute this. Although his counsel before the immigration judge was aware that his family unity petition had been approved, she waived that argument and allowed him to admit that he was an inadmissible alien, and the government does not dispute that either. Had he been treated by the immigration judge as an alien with family unity status, the proceedings would have been entirely different. How did he have family unity status so many years later? The status, as far as I am aware, does not expire during the period when he is waiting for his visa number to come up. So what do you base that statement on, that he had family unity status? His wife submitted an application under the family unity program for a permanent resident visa on his behalf in 1993, and it was approved in 1994, and he was awaiting a permanent resident visa number. Yeah, but then we get into spousal abuse, and then what happens to marriage? The family unity status did not expire. But she testified, didn't she? The testimony of the spouse at the immigration hearing was related to a misdemeanor issue that should not have been brought up at all because he had family unity status, and he was eligible for a cancellation of removal. So we're to ignore the record? The record is based on a charge that was an incorrect charge. What's in the record that says that? What's in the record is the fact that he had family unity status. I understand that. Right. We have testimony from the wife. Which testimony was? There's a criminal record, right? There is a misdemeanor record. Cancellation of removal for someone with family unity status, however, is under a different provision than that of an inadmissible alien. All right. And the standard is whether there is an aggravated felony. What's marital status right now? What is his status right now? Yeah. His status is that he still has a family unity status. I didn't ask that. I want to know the status of his marriage. Oh, they are still married. They're still married? They're still married. Okay. I thought they were getting a divorce. No, there is no divorce. They are still married. Okay. There was a letter that I guess it was dated June 5, 1992, from 1994? No, 1992. It says notice of decision. You have filed an application for temporary resident status pursuant to Section 210 of the Immigration Reform and Control Act. It says the service has sent you a notice of intent to deny. That letter is related to a prior application for special agricultural worker amnesty. It is not related to his wife's 1993 petition for a change of status under the family unity program. Where is the documentation in the record that shows that he was approved for family unity? That is at page 178, I believe. Let me double check that. Oh, wait. I apologize. Is it page 212, Your Honor? 212. Yes. He had not in fact been admitted yet, though, correct? No, he's not admitted as a permanent resident alien. His application for family unity status had been approved. And under the case law, family unity status provides a special status for those waiting for their visa number to come up. So he's in a temporary kind of status, then? He's sort of in limbo. But the family unity program is designed, was designed by Congress to make, to provide benefit, mandatory, not discretionary benefits. And among those benefits is that he is deemed admitted for any purpose, for purposes of cancellation. So did his visa number ever come up? His visa number has not been, has not come up, no. So he's technically, he's never been, he's never been adjusted to LPR status. That's correct. Is that right? That is correct. So how does this all relate to your claim? Because he has family unity status, which under the case law, it treats him as having been admitted for any purpose, for purposes of cancellation of removal. That means that he is not, he was charged as an inadmissible alien, when in fact for these, for purposes of being removed. Now maybe you didn't quite catch my question. So what happened at the hearing? Does this all relate to ineffective assistance of counsel? Yes, it does, Your Honor. That's what I meant. Okay. So because she allowed her client to, Mr. Soto Plasencia, to waive his, to waive this argument that he was admitted. He admitted that he was inadmissible. He's inadmissible. Therefore, what happens is that the cancellation of removal standard, which would look at whether there's been an aggravated felony and whether he's been in the, when he's been, had that admitted status for at least seven years, which he had, did not come into play. The issue wasn't raised to the IJA or the BIA, correct? The issue was raised. To the BIA? To the BIA as well. Let's see. The issue was raised. Let's take the original proceedings. With the immigration judge? Yeah. Okay. The issue was raised. The IJA and the BIA in the, let's call it the direct proceeding. Was it raised? Yes, it was. The, if you look at what he, what he said in his, let's start with the IJA. The counsel, Ms. Rohani, asked the judge, told the judge she was submitting an application for adjustment of status based on his wife's 1993 petition. The judge then, then proceeded to inquire as to the four questions on the, on the notice of, on the notice to appear, and she, rather than, rather than pursue the adjustment of status, she waived that and called him and allowed him to. But technically it wasn't raised. Which is part of the ineffective assistance. Well, that's why you claim the IAC. Right, right. So it wasn't raised to the BIA either. It was raised to the BIA in his. In that proceeding. It was raised to the, to the Board of Immigration. In the notice of appeal? In the notice of appeal. Okay, which, which sentence says, raises this issue? He states in his notice of appeal, if you look at page 91 of the administrative record. I have. Just, just go ahead. I have three United States children. My wife is a United States citizen. I was eligible for cancellation of removal, a misdemeanor conviction, and another for driving without a license, are not bar for the adjustment of status to that of a lawful permanent resident through my wife's petition. Now. That slow curve is supposed to raise it. All right. Let's say we don't think that raises it. What next? I'm, I'm sorry. Let's say we don't think that raises the issue. What next? What's your next point about family unity status? I would, I would say that the Board of Immigration of Appeals has an obligation to review the entire record. Wait a minute. Let's say we don't believe it was raised to them and it was not before them. So that it was waived as far as that's concerned. Okay. What's your next best point on why we should consider it? Because the ineffective assistance of counsel was not just on this issue. In addition to that issue. The issue you're arguing. So you say, all right, skip that issue then and we'll talk about other issues. Is that what you're saying? By the way, you have 22 seconds left. I would say that fairness dictates that under the family unity program, someone who has family unity status not be torn away from their family. Okay. Because it wasn't raised, we should do it to be fair. I got you. Okay. Let's, you've got, you finished your time, but I'll give you one minute for rebuttal. Thank you. Good morning, Your Honor. May it please the Court. Dan Goldman on behalf of the Attorney General Eric Holder. This Court should uphold the agency decisions in this case and dismiss the petitions for review for lack of jurisdiction. This case is ultimately about an application for adjustment of status. In order to make that application, Mr. Soto Plasencia needed a waiver of inadmissibility because of his convictions. He came into court. He never challenged those convictions, correct? No. No, Your Honor. I mean, he could have argued that they were not crimes involving moral turpitude, correct? He could have. He didn't raise that. He didn't raise that before the IAJ and he didn't raise it before. No, Your Honor. And that's one of the problems in this case, that the arguments, and it's not default counsel, current counsel. Right. But those arguments simply were not exhausted either before the immigration judge or the board. So he was, all this was about adjustment of status, correct? Yes, Your Honor. All right. And he didn't, and that's because we look at his misdemeanor convictions as crimes involving moral turpitude, so he had to get a waiver of inadmissibility. Yes, Your Honor. How does the, how do you understand the claim regarding a family unity program? How does that fit into this? Your Honor, as the government addressed in its brief at footnote 8, which is on page 27, we don't believe that that is a valid basis for relief in this case. First of all, he got that letter, but he ultimately never adjusted. As Your Honor noted earlier, he never got, his visa number never became available. It's one thing to get a letter, but you still need to go into proceedings to go before an immigration judge to adjust. That never happened. So, and in addition, he comes back in 1995, I believe, and admits that he entered illegally. So that is, it's a red herring for this Court. In addition to the fact, as was discussed, it was waived. In addition to the fact it was not only waived before the immigration judge, before the board on direct appeal, it was also never raised as an issue by Mr. Scher, Mr. Soto, who is Mr. Soto's second attorney, who filed a very detailed, very thorough motion to reopen in this case. And I would urge this Court to look not simply at Mr. Rahani's conduct, but at the motion to reopen, which alleged ineffective assistance. There's no allegation today or in briefs from counsel that Mr. Scher was ineffective. None. All of these issues that are being raised for the first time before this Court could have been raised in Mr. Scher's motion. They could have been raised initially, but they certainly could have been raised in that motion to reopen, and they never were. I also want to emphasize, Mr. Soto Placencia is not without a potential remedy. If he believes that the issues that he's seeking to raise for the first time on appeal to this Court, if he believes those issues are a basis for relief, he can file a motion to reopen with the board. That would be out of time, and it would be numerically barred and everything. It would take the board acting on its own sua sponte.  First, if, as counsel has discussed today, he was not removable as charged and as conceded and as found by the immigration judge, that seems to be an issue that the board, I can't bind the board to any particular position, but that seems to be an issue that could be a good one for the board to look at under its sua sponte authority. In addition, he can go to DHS in Los Angeles and ask them to join in a motion to reopen on that basis. And if he gets DHS to consent to the motion to reopen, the number bar, the time bar that you alluded to, those are non-issues. I suppose he could claim ineffective assistance as to the first motion to reopen also. Absolutely, Your Honor. And say the airport's tolled or something of that nature. He could ask for equitable tolling on that basis, or if he goes, as I said, he goes to DHS and asks them to join in a motion to reopen on that basis. That door, the door at DHS is always open for him to raise that as a possibility. He hasn't even knocked on that door. And that's where, as compelling as some of the circumstances are in this case, I would urge this Court to look at the exhaustion requirement. It's not simply a statutory requirement, but it's also a prudential requirement. The issues that are being raised for the first time on appeal are issues that fall squarely within the agency's purview. It would be inappropriate, with all due respect for this panel, to address those issues in the first instance. They should go, if they want to, to the agency. There's one other point, Your Honor, I wanted to respond to something that was discussed earlier. Sure. It was suggested that Mr. Soto-Placencia had raised the FUP issue, Family Union Program issue, in his original notice of appeal. I would disagree with that contention. What he said in that notice of appeal, which I believe is at page 91 of the record, he says, I'm eligible for cancellation of removal. But he's talking about cancellation of removal for a non-LPR. And the way that we know that is he talks about, number one, exceptional and extremely unusual hardship, which is one of the standards he has to meet as a non-LPR. He also talks about hardship specifically. He's referring to his wife and his children, who are U.S. citizens. That's all for non-LPRs. What was raised today, what was discussed today, was the possibility of cancellation for an LPR. So those are two separate things. So we would argue, again, he did not exhaust that argument before the board. So what's the benefit in this context of having received that letter regarding family unity? Ultimately, Your Honor, it could lead to adjustment. But that's it? Yes. So for purposes of this case, it really has no consequence? That's correct, Your Honor. It could. If he wants, again, if he wants to raise that in the context of ineffective assistance, either against Ms. Romani or against Mr. Scherr, he could raise that. And I would also emphasize, Your Honor, I'm not here to defend Ms. Romani's conduct. She was not a model of legal advocacy. No, that's not how she even understood what was going on. No. It's pretty hard to defend Sotomayor's conduct. And I'm not defending that either, Your Honor. But I do think it's important to focus on the very narrow issue is, was he prejudiced by Ms. Romani's conduct? He came into court and he lied. That's what cost him his waiver. Ms. Romani didn't tell him to come into court and lie. He doesn't argue that she suggested that he might lie. No, Your Honor. And he came into court and he took an oath to tell the truth. And the immigration judge made a very specific finding that he did not tell the truth. There's plenty of evidence in the record to support that finding. Substantial evidence standard would be met. There's certainly no evidence to compel reversal of that finding. Your Honor, for all of those reasons, this Court would – the government would urge this Court to dismiss the petitions for review, subject to the Court's questions. Okay. You mean deny? Well, dismiss for lack of jurisdiction or deny, Your Honor. Okay. All right. All right. Okay. Thank you. Thank you, Your Honor. Ms. Foster, you have one minute for a rebuttal. I'd like to make two quick points. The first point is that exhaustion in front of the Board of Immigration Appeals does not require the kind of brilliant and artful pleading that the government urges here today. Once the Board of Immigration Appeals is on notice sufficient to let them know that there is an issue, they have an opportunity to pass on those issues. And that's all that is required. And as for his notice of appeal, that was a pro se notice of appeal. There was no attorney there. He'd had a bad attorney below and an immigration judge who told him that he had to meet certain things, including a waiver. Nobody ever informed him otherwise. These are basically civil proceedings, aren't they? It's not a criminal case. That is true. But you have to. All right. And he can hire whatever counsel he wants or he can go pro prairie if he wants. But there is a choice, not the government's. And the government has no obligation to furnish counsel. I'm not arguing that there is an obligation to furnish counsel. I'm arguing that there is a pro se standard. But he did what he did and he made the record that he did, and that's what we're looking at, isn't it? No. The record we're looking at is not the we can't know what the record would be had he been charged under the correct statute. No. We're looking at the record as it is, not what it could have been if he had the best attorney in the world. What the record that we're looking at is not the record that we can't speculate what would have happened had he been charged under the correct statute. All right. Your time is up. Okay. Thank you. This was a pro bono case. We appreciate your willingness to take the case. We really do. And we appreciate all arguments on both sides. Thank you very much. Okay. Let's see. Our next case on the calendar was Pinedas v. Marshall, but that's been submitted on the briefs. And our next case for argument is Trotter v. Harrison.
judges: Beezer, Fernandez, Paez